**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SASHA ALLEMAN**, on behalf of herself and others similarly situated, | ) ) ) | Case No. 2:20-cv-04830-MHW-EPD |
| | ) | Judge Michael H. Watson |
| Plaintiff, | ) ) | Chief Magistrate Judge Elizabeth Preston Deavers |
| v. | ) ) | |
| | ) | **JOINT MOTION FOR FAIR LABOR** |
| **LPS SERVICES, LLC,** | ) | **STANDARDS ACT SETTLEMENT** |
| | ) | **APPROVAL** |
| Defendant. | ) | |

Representative Plaintiff Sasha Alleman ("Representative Plaintiff"), on behalf of herself and of the class members, and Defendant LPS Services, LLC ("Defendant") (collectively, the "Parties") hereby jointly and respectfully request that this Honorable Court: approve the Parties' Settlement Agreement and Release of the claims made pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code § 4111, *et seq*., and Ohio Revised Code § 4113.15; approve the requested Service Award to Representative Plaintiff; and, approve Plaintiffs' Counsel's requested attorneys' fees and costs.

In support of this Motion, the Parties submit the following:

**Exhibit 1**:     Fully executed Settlement Agreement, with Exhibit A (Settlement Class List); Exhibit B (Settlement Notice [opt-ins]); and Exhibit C (Settlement Notice [non-opt-ins]);

**Exhibit 2**:     Declaration of Robi J. Baishnab; and

**Exhibit 3**:     Proposed Order Granting Approval of Settlement.

As explained in the attached Memorandum in Support, settlement was reached during arms-length negotiations between the Parties and through mediation before Honorable Magistrate Judge Kemp; where each Party was represented by experienced counsel and following substantial investigation and informal exchange of information; and on the basis of mutual recognition of the

i

strengths and weaknesses of the Party's respective legal positions, and in light of the risks to each side of continued litigation.[1]

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/Robi J. Baishnab*
Robi J. Baishnab (0086195)
1360 E 9th St., Suite 808
Cleveland, OH 44114
(216) 230-2955
(330) 754-1430 (Fax)
rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
7266 Portage Street, NW, Suite D
Massillon, Ohio 44646
(330) 470-4428
(330) 754-1430 (Fax)
sdraher@ohlaborlaw.com
hans@ohlaborlaw.com

*Attorneys for Plaintiffs*

**MOWERY YOUELL & GALEANO, LTD.**

*/s/ Barbara Letcher (with permission)*
Barbara Letcher, Of Counsel (0046948)
485 Metro Place South, Suite 220
Dublin, Ohio 43017
Telephone: (614) 764-1444
Facsimile: (614) 760-8654
Email: bletcher@myglaw.com

*Attorneys for LPS Services, LLC*

---

[1] Agreement at 1-4.

## MEMORANDUM IN SUPPORT

### I.     FACTUAL AND PROCEDURAL BACKGROUND

#### A.     The Action

On September 15, 2020, Representative Plaintiff Sasha Alleman filed this Action, against Defendant, with claims for unpaid overtime brought as a collective action under the FLSA and as a class action pursuant to Fed. R. Civ. P. 23 for alleged violations of Ohio wage laws. Specifically, Representative Plaintiff alleged that Defendant had a company-wide policy that requires the Settlement Class Members to always arrive at least 10 minutes prior to their start time to allow for proper change of shift procedures, such as receiving a shift change report and attending a safety meeting, but does not pay for this work which resulted in unpaid overtime.[2]

On October 16, 2020, Defendant filed its Answer, in which it denied, and it continues to deny, all liability.[3] On October 22, 2020, Representative Plaintiff filed her Motion for Conditional Certification and Court Ordered Notice, which was granted on April 6, 2021.[4] On April 19, 2021, the Court granted the Parties' Joint Motion to Stay Case Deadlines Pending Mediation.[5]

On June 21, 2021, the Parties participated in a mediation before Honorable Magistrate Judge Kemp and reached a settlement.[6] On July 29, 2021, the Parties notified the Court that in the process of preparing this Agreement, it was discovered that Defendant inadvertently failed to include some data in the information that was provided for mediation that was otherwise believed

---

[2] ECF No. 1.

[3] ECF No. 5.

[4] *See* ECF Nos. 10, 19, 26, and 33.

[5] ECF No. 36.

[6] ECF Nos. 37 and 38.

to be complete.[7] On August 20, 2021, the Parties notified the Court that the Parties conferred and Defendant provided all remaining outstanding names and dates of employment necessary for Plaintiffs' Counsel to update estimated damages calculations, and that Plaintiffs' Counsel verified the calculations.[8]

### B.    Negotiation of The Settlement

At the time of mediation, there were 34 Opt-In Plaintiffs who joined this case.[9] For the purposes of mediation, Defendant provided Plaintiffs' Counsel with a list of 292 employee IDs and dates of employment. Per agreement, Plaintiffs' Counsel then applied an Excel randomizing formula to select 25%, for whom Defendant produced employee names, time, and pay data. The formula was shared with Defendant's Counsel. Plaintiffs' Counsel retained the services of a Ph.D. Economist to create a damages model, which included a toggle to input estimated unpaid compensable time per day. Estimated damages calculated for the 25% sampling was extrapolated to cover the 292 individuals comprising the mediation data set according to their dates of employment. The model was shared with Defense counsel on June 14, 2021 and served as a basis for settlement and mediation negotiations.[10] After mediation, Defendant supplemented the class data, which resulted in an increased settlement amount and the final settlement class size of 313 individuals.[11]

The exchange of documents and the damages model, along with related discussions and

---

[7] ECF No. 39.

[8] ECF No. 41.

[9] ECF Nos. 12, 14, 16, 22-25, and 27-32.

[10] Agreement at 2; Baishnab Decl. at ¶ 14.

[11] Agreement at 3; Ex. A to Agreement; ECF Nos. 39 and 41.

debates between counsel enabled the Parties to understand and assess the detail and substance of their respective claims, counterclaims and defenses.[12]

Settlement resolves a bona-fide disputed matter. The purpose of this Settlement is to fully and finally settle all Released Claims, as defined in the Settlement Agreement. The Parties disagreed, and continue to disagree, as to whether Defendant failed to pay the Settlement Class Members for pre-shift work and/or overtime as alleged, whether liquidated damages are appropriate, and whether a two-year or three-year statute of limitations is applicable. Nevertheless, the Parties have come to a reasonable, fair, and adequate agreement to resolve this matter.[13]

As part of their pre-mediation evaluation, Plaintiffs' Counsel calculated the mathematical expected value of the case through trial using TreeAge Pro©, a decision tree software. Specifically, Plaintiffs' Counsel assigned subjective probability values to each stage of the litigation (*e.g.*, conditional certification, Rule 23 class certification, decertification, trial, establishing willfulness, establishing entitlement to liquidated damages in various amounts, etc.). Each of these risk probabilities was then compounded and analyzed against the damages calculated in the model. By utilizing this process, Plaintiffs' Counsel believes he was able to more fully appreciate the complete risk picture, and economic value of the case, rather than simply relying on intuition and experience. The final settlement value that was achieved exceeded the pre-mediation expected value. Plaintiffs' Counsel believes that this fact confirms his experiential opinion that the proposed settlement is fair, adequate, and reasonable.[14]

Counsel for all Parties believe in the merits of their respective client's position but,

---

[12] Agreement at 2; Baishnab Decl. at ¶ 15.

[13] Agreement at 1 and 3; and at ¶ 11; Baishnab Decl. at ¶ 16.

[14] Baishnab Decl. at ¶ 17.

nonetheless, recognize that the litigation is uncertain in terms of duration, cost, and result. Continued litigation would be risky for all. Even if Representative Plaintiff succeeded on the merits of her collective claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.[15]

### C. __The Settlement Terms__

#### 1. Settlement Notices

The Settlement Class consists of **313** individuals identified in Exhibit A of the Settlement Agreement. The Settlement Class consists of Representative Plaintiff, Opt-In Plaintiffs, and present and former full-time hourly security officers, and those with similar duties but other titles, employed by Defendant during the period of September 15, 2017 to April 3, 2021, who suffered alleged damages based on data produced by Defendant, and who have not yet opted into the Action.[16]

If approved by this Court, settlement will be effectuated by sending "Notice of Settlement" by Standard U.S. mail to each Settlement Class Member, which will explain the terms of settlement, the claims process, and the amount of respective Settlement Class Members' Settlement Award. Opt-In Plaintiffs will receive a copy of the Notice attached as Exhibit B and the Settlement Class Members who have not yet joined this case as of the date of this Agreement will receive a copy of the Notice attached as Exhibit C. These Notices will be accompanied by the Settlement Class Member's settlement payment. The Settlement Class Members who cash their settlement checks will agree to the release of claims described in the Settlement Agreement and

---

[15] *Id.* at ¶ 18.

[16] Agreement at ¶ 1.

each Notice.[17]

## 2. Allocations

The Settlement Agreement resolves all claims made in the Action and provides class-wide relief and distribution of funds pursuant to the FLSA. Settlement includes Defendant paying the Global Settlement Fund in the amount of **$99,386.12**, which includes alleged unpaid overtime, the Service Award, liquidated damages, attorneys' fees, and costs. The Global Settlement Fund does not include Defendant's share of the applicable employer tax withholdings. The cost of Settlement administration (**$6,269.00**) will be paid 50% by each side, with Plaintiffs' 50% ($3,134.50) being deducted from the fund and Defendant's 50% ($3,134.50) paid by Defendant outside of the fund.[18]

The Settlement Agreement provides for a Service Award of **$2,500.00** to Representative Plaintiff as recognition of, and in consideration for, her substantial assistance rendered to Plaintiffs' Counsel and to the Action in pursuing the rights of all Settlement Class Members. Defendant does not oppose the requested Service Award.[19]

If approved by the Court, **$33,128.71**, which represents one-third of the total settlement amount, shall be distributed to Plaintiffs' Counsel as attorneys' fees. Settlement also includes **$3,777.11** to be distributed to Plaintiffs' Counsel for costs incurred in pursuing the Action. Plaintiffs' Counsel will not receive payment for any fees or costs incurred in the course of securing and effectuating settlement, including responding to inquiries from Settlement Class Members.

---

[17] *Id*. at ¶ 16.

[18] *Id*. at ¶ 7; Baishnab Decl. at ¶ 19.

[19] Agreement at ¶¶ 15 and 26; Baishnab Decl. at ¶ 20.

Defendant does not oppose the requested fees or costs.[20]

After deducting fees, expenses, 50% of settlement administration costs, and service award, the remaining amount of **$56,845.80** ("Net Settlement Fund") is allocated across the Settlement Class Members as reflected in Exhibit A of the Settlement Agreement. Settlement Awards to each Settlement Class Member were determined by using the respective member's *pro rata* share of the Net Settlement Fund weeks of employment. The Total Settlement Amount reflects approximately 100% alleged unpaid overtime, with 100% liquidated damages, at approximately 6.0 minutes of alleged unpaid time per day, for a 2-year lookback period. The average individual settlement payment is approximately $181.62. The Settlement Administrator will determine and finalize the Settlement Awards, as well as the tax withholding amounts and employer payroll tax amounts for Settlement Class Members, as applicable.[21]

## II.   THE COURT SHOULD APPROVE THE FLSA CLASS MEMBERS' SETTLEMENT

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As shown in the attached Declaration of Robi J. Baishnab, and as explained below, the Court should approve the Settlement.

### A.   *The Seven-Factor Standard Is Satisfied.*

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."[22] As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA]

---

[20] Baishnab Decl. at ¶¶ 22-23.

[21] Agreement at ¶ 29(b); Ex. A of Settlement Agreement; Baishnab Decl. at ¶ 21.

[22] *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982)).

action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"[23] The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[24]

"The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case."[25] Application of those factors to this Settlement demonstrates that the Court should approve the Settlement.

### 1.      No Indicia of Fraud or Collusion Exists.

Plaintiffs' Counsel and Defendant's Counsel have extensive experience litigating FLSA claims, including claims for unpaid overtime, and each were given the opportunity to assess the merits of the Parties' claims and defenses, as well as the potential damages at issue in this case. The Parties contested the issues early, and Defendant continues to deny any wrongdoing.[26]

---

[23] *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

[24] *Hebert v. Chesapeake Operating, Inc*., No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *6 (S.D. Ohio Sep. 20, 2019) (J. Morrison) (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14; and *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007)).

[25] *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *6 (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14 (internal quotations and further citations omitted).

[26] Baishnab Decl. at ¶¶ 15-16.

Settlement was achieved only after arm's-length good faith negotiations and mediation before Honorable Magistrate Judge Kemp. And notwithstanding settlement, the Parties continue to disagree as to whether any overtime compensation is owed under the FLSA or Ohio law.[27] As such, there are no indicia of fraud or collusion.

###         2.         The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval of the Settlement.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties vehemently disagree about the merits of Representative Plaintiff's claims. Specifically, Representative Plaintiff alleged that Defendant had a company-wide policy that requires the Settlement Class Members to always arrive at least 10 minutes prior to their start time to allow for proper change of shift procedures, such as receiving a shift change report and attending a safety meeting, but does not pay for this work which resulted in unpaid overtime.[28] Defendant denies Representative Plaintiff's claims, and further denies that it violated any federal or state law and has consistently maintained this position throughout the duration of this case. Had this matter not settled, ongoing disputes would remain regarding certification, liability, damages, and whether the two- or three-year statute of limitations applied.[29]

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling, which could result in no recovery for the class at all. By contrast, the Settlement promptly and efficiently provides substantial relief to Representative Plaintiff and the

---

[27] *Id.* at ¶ 16.

[28] ECF No. 1.

[29] Baishnab Decl. at ¶ 16.

Opt-In Plaintiffs and amplifies the benefits of that relief through the economies of class resolution. Settlement represents a successful resolution of the claims given that a trier of fact might conclude that the class is not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement, or that a court might not allow the claims to proceed collectively. It also provides immediate and substantial relief without the attendant risks and delay of continued litigation and appeals.[30]

### 3. <u>Investigation Was Sufficient to Allow the Parties to Act Intelligently.</u>

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Defendant produced a list of 292 employee IDs and dates of employment. Per agreement, Plaintiff's Counsel then applied an Excel randomizing formula to the list to select 25%, for whom Defendant produced employee names, time, and pay data. A Ph.D. Economist created a damages model, which includes a toggle to input estimated unpaid compensable time per day. Estimated damages calculated for the 25% sampling, plus additional amounts from the supplemental production, was extrapolated and ultimately allocated to cover all Settlement Class Members according to their dates of employment. The model was shared with Defense counsel and served as a basis for settlement and mediation negotiations.[31]

Plaintiffs' Counsel calculated the mathematical expected value of the case through trial using TreeAge Pro©, which permitted him to more fully appreciate the complete risk picture, and economic value of the case, rather than simply relying on intuition and experience. Through this analysis, combined with experience, Plaintiffs' Counsel believes that that the proposed settlement is fair, adequate, and reasonable.

---

[30] *Id*. at ¶ 16.

[31] Agreement at 2-3; Baishnab Decl. at ¶ 14.

4. **Given the Risks of Litigation, the Court Should Approve the Settlement.**

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. For example, expert time studies for pre-shift off-the-clock work cases could cost thousands of dollars. Moreover, Defendant raises affirmative defenses to Representative Plaintiff's claims, and the outcome of those defenses is uncertain as well. Defendant also may have sought decertification after discovery. Consequently, continued litigation would be risky for all Parties.[32]

Representative Plaintiff's range of possible recovery is also open to dispute. Even if Representative Plaintiff succeeded on the merits of her claims, which Defendant disputes, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties disagree about whether any allegedly unpaid pre-shift work actually occurred, whether it is compensable under the FLSA or Ohio law, whether any overtime compensation is owed, and whether the case was appropriate for collective treatment and/or whether decertification would be warranted. Further, the Parties disagree as to whether a three-year statute of limitations and liquidated damages are applicable.[33]

5. **Experienced Counsel Recommend the Court Approve the Settlement.**

By entering into both the collective and individual agreements, the Parties indicate their position that the Settlement is reasonable, fair, and adequate. Likewise, both Plaintiffs' and Defendant's Counsel have extensive experience in wage-and-hour collective and class actions, the Parties have acted in good faith, and Counsel have represented their clients' best interests in

---

[32] Baishnab Decl. at ¶ 18.

[33] *Id*. at ¶ 16.

10

reaching the Settlement. Plaintiffs' Counsel and Defendant's Counsel support the Settlement as reasonable, fair, adequate, and in the best interest of all Parties.[34]

### 6. Public Interest.

Public interest favors approval because the Settlement reflects a reasonable compromise over disputed issues, and results in prompt and adequate compensation to the Settlement Class Members without the inherent risks and costs of litigation. Approval of the Settlement will encourage settlement of litigation.

### B. *The Settlement Distributions Are Fair, Reasonable, and Adequate.*

When scrutinizing an FLSA collective action settlement, "a court must ensure that the distribution of the Settlement proceeds is equitable."[35] All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for the Settlement Class Members.

### 1. The Payments to Class Members Are Reasonable and Adequate.

The Settlement confers substantial benefits upon the Settlement Class Members. For example, Defendant's Counsel produced wage and hour data for the Settlement Class Members. Through analysis by Plaintiffs' Counsel and the Economist, a damages model was developed, reflecting alleged unpaid overtime for the entire class. The model was shared, discussed, and adjusted throughout the process.[36]

Settlement Awards to each Settlement Class Member were determined by using the respective member's *pro rata* share of the Net Settlement Fund weeks of employment. The Total

---

[34] *Id.* at ¶¶ 3-12, and 17.

[35] *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

[36] Baishnab Decl. at ¶ 14.

Settlement Amount reflects approximately 100% alleged unpaid overtime, with 100% liquidated damages, at approximately 6.0 minutes of alleged unpaid time per day, for a 2-year lookback period. The average individual settlement payment is approximately $181.62.[37]

Additionally, the total settlement amount exceeds the calculated expected value per Plaintiffs' Counsel's use of the TreeAge Pro software in this case, which confirmed Plaintiffs' Counsel's belief that the proposed settlement is fair, adequate, and reasonable.[38]

### 2. **Plaintiff's Service Award Is Proper and Reasonable.**

Representative Plaintiff seeks a **$2,500.00** service payment (the "Service Award").[39] Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[40] Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[41]

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the

---

[37] Ex. A of Settlement Agreement; Baishnab Decl. at ¶ 21.

[38] Baishnab Decl. at ¶ 17.

[39] Agreement at ¶¶ 15 and 26; Baishnab Decl. at ¶ 20.

[40] *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

[41] *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010)).

prosecution of the case."[42] Here, not only was Representative Plaintiff willing to shoulder the burden of being a named plaintiff in a class and collective action lawsuit, she also contributed significant time, effort, and detailed factual information, enabling Plaintiffs' Counsel to evaluate the strength of her case. Representative Plaintiff was also available and provided valuable guidance as the Parties were negotiating settlement and provided Plaintiffs' Counsel with the information they needed to evaluate whether the proposed Settlement was in the best interest of Opt-In Plaintiffs. As such, her time and efforts support the requested Service Award. Notably, Defendant does not object to the requested Service Award.[43]

### 3. The Attorneys' Fees to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of the Settlement are fair to the Representative Plaintiff and the Settlement Class Members, it may review the Parties' agreement (as outlined in the Settlement Agreement) as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendant's agreement that Plaintiffs' Counsel would receive one-third of the Global Settlement Fund, or **$33,128.71**, for attorneys' fees.[44]

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the

---

[42] *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

[43] Baishnab Decl. at ¶ 20.

[44] Agreement at ¶ 28; Baishnab Decl. at ¶ 22.

action."[45] In *Fegley v. Higgins*,[46] the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."[47]

This Court has approved one-third fee requests in numerous similar class actions and collective actions.[48] "[A]n award of one-third of the settlement fund as a fee award… is a normal fee amount in a wage and hour case."[49] Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses; and they will not be

---

[45] 29 U.S.C. § 216(b).

[46] 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994).

[47] *Id.* at 1134–35 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502–03 (6th Cir. 1984)).

[48] *See e.g. Hixon et al v. MPW Industrial Services, Inc.*, SD Ohio, Case No. 2:20-cv-03361(Dkt. No. 39) ("The amount requested is typical for attorney's fees awarded in common fund, FLSA collective actions in this District"); *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *13 (S.D. Ohio Aug. 12, 2020) ("The Court finds the [one-third] fee-request here, seeking one-third of the total settlement agreement, is reasonable.") *Campbell v. Wise Med. Staffing*, Case No. 2:18-CV-00493, 2020 U.S. Dist. LEXIS 253264, at *4 (S.D. Ohio Feb. 21, 2020) ("Court agrees and finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees"); *Adams et al v. Frontier Railroad Services, LLC*, USD SD Ohio, Case No. 2:19-cv-00808 (Dkt. No. 43) ("The requested attorney's fees award, which is one-third of the common fund, is reasonable") (citing *Hebert*, 2019 WL 4574509, at *7–8; *Younge v. The Huntington National Bank*, SD Ohio, Case No. 2:18-cv-00314 (ECF No. 91) (same); *Perry v. DASCO Home Medical Equipment, Inc.*, SD Ohio, Case No. 2:19-cv-01921; Dkt. Nos. 10 and 11 (approving 1/3 early in litigation without mediation); *Mulledy v. American Air Furnace Company*, SD Ohio, Case No. 2:20-cv-05185 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Gammon, et al. v. Marietta OPCO, LLC d/b/a Arbors at Marietta*, SD Ohio, Case No. 2:19-cv-05140 (same); and *Green, et al. v. H.A.D., Inc.*, SD Ohio, Case No. 2:15-cv-933 (same).

[49] *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *14 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, *10–11 (N.D. Ohio July 27, 2018)).

compensated for any time in effectuating notice and settlement, including fielding inquiries from Settlement Class Members and working with the Settlement Administrator.[50] "In doing so, Plaintiffs' Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award."[51]

Finally, courts in this Circuit acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming."[52] This case involved contested issues of whether Defendant's employees performed work for which they were not properly compensated and, if so, how much of that time was compensable. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the Global Settlement Fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases.[53]

### 4.    The Court Should Authorize Reimbursement of Expenses.

The Court should approve reimbursement of the expenses in this case. Plaintiffs' Counsel's current litigation costs are **$3,777.11**. Costs incurred to date by Plaintiffs' Counsel include: Court filing fee, service, postage, damages model, and vendor verification of supplemental production

---

[50] Baishnab Decl. at ¶ 22.

[51] *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19 (citation omitted).

[52] *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10 (citation omitted).

[53] *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

and calculation.[54] "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement."[55] In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class."[56]

Because these costs are reasonable and were incurred in the prosecution of Representative Plaintiff's claims, the Court should award Plaintiffs' Counsel reimbursement of these costs and expenses from the Global Settlement Fund. Further, the Parties ask that the Court approve reasonable increases above the current estimated costs, to be drawn solely from the Global Settlement Fund, to account for unforeseen costs incurred in effectuating notice and settlement.

## III. CONCLUSION

The Parties request that this Court enter the Order, attached hereto as **Exhibit 3**:

1. Approving the Parties' Settlement Agreement, a fully executed copy of which is attached hereto as **Exhibit 1**;

2. Approving the requested Service Award to Sasha Alleman;

3. Approving Plaintiffs' Counsel's requested attorneys' fees and costs, as well as approve reasonable increases above the current estimated costs, to be drawn solely from the Global Settlement Fund, to account for unforeseen costs incurred in effectuating notice and settlement;

4. Retaining jurisdiction over the Action to enforce the terms of the Settlement Agreement; and

5. Dismissing this matter with prejudice.

---

[54] Baishnab Decl. at ¶ 23.

[55] *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *20 (citation omitted).

[56] *Id.*

Respectfully submitted,

**NILGES DRAHER LLC**

/s/*Robi J. Baishnab*
Robi J. Baishnab (0086195)
1360 E 9th St., Suite 808
Cleveland, OH 44114
(216) 230-2955
(330) 754-1430 (Fax)
rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
7266 Portage Street, NW, Suite D
Massillon, Ohio 44646
(330) 470-4428
(330) 754-1430 (Fax)
sdraher@ohlaborlaw.com
hans@ohlaborlaw.com

*Attorneys for Plaintiffs*

**MOWERY YOUELL & GALEANO, LTD.**

/s/ *Barbara Letcher (with permission)*
Barbara Letcher, Of Counsel (0046948)
485 Metro Place South, Suite 220
Dublin, Ohio 43017
Telephone: (614) 764-1444
Facsimile: (614) 760-8654
Email: bletcher@myglaw.com

*Attorneys for LPS Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Robi J. Baishnab*
Robi J. Baishnab

*Counsel for Plaintiffs*

17