# Exhibit 1

Settlement Agreement and Release

DocuSign Envelope ID: E9DFB56E-163E-4726-A7D3-B945B1C135D4

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

Subject to Court approval, Defendant LPS Services, LLC, including its officers, directors, shareholders, employees, representatives, insurers, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities (collectively, "Defendant"), and Sasha Alleman, ("Representative Plaintiff") on behalf of herself individually, and on behalf the Settlement Class Members (as defined below), inclusive of the current opt-in Plaintiffs, voluntarily enter into this Settlement Agreement and Release (this "Agreement") to settle all claims and issues as set forth more fully below. Representative Plaintiff and the Settlement Class Members will be collectively referred to as "Plaintiffs".

## RECITALS

**WHEREAS**, in *Alleman v. LPS Services, LLC*, Case No. 2:20-cv-4830, filed in the United States District Court for the Southern District of Ohio, ("the Action"), Representative Plaintiff asserted collective overtime claims against Defendant on behalf of herself and others similarly situated under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and Ohio Revised Code § 4111.03(D) and § 4113.15 alleging unpaid overtime, liquidated damages, attorneys' fees, costs, expenses, and interest. Specifically, Representative Plaintiff alleged that Defendant had a company-wide policy that requires the Settlement Class Members to always arrive at least 10 minutes prior to their start time to allow for proper change of shift procedures, such as receiving a shift change report and attending a safety meeting, but does not pay for this work which resulted in unpaid overtime; and

**WHEREAS**, the purpose of this Agreement is to fully and finally settle all Released Claims (as defined below) Plaintiffs may have against Defendant; and

**WHEREAS**, the Complaint was filed on September 15, 2020, against Defendant, with

claims for unpaid overtime brought as a collective action under the FLSA and as a class action pursuant to Fed. R. Civ. P. 23 for alleged violations of Ohio wage laws;[1] and

**WHEREAS**, on October 16, 2020, Defendant filed its Answer, in which it denied, and it continues to deny, all liability;[2] and,

**WHEREAS**, on October 22, 2020, Representative Plaintiff filed her Motion for Conditional Certification and Court Ordered Notice, which was granted on April 6, 2021;[3] and,

**WHEREAS**, on April 19, 2021, the Court granted the Parties' Joint Motion to Stay Case Deadlines Pending Mediation;[4] and,

**WHEREAS**, at the time of mediation, there were 34 Opt-In Plaintiffs who joined this case;[5] and,

**WHEREAS**, for the purposes of mediation, Defendant provided Plaintiff's Counsel with a list of 292 employee IDs and dates of employment. Per agreement, Plaintiff's Counsel then applied an Excel randomizing formula to the list to select 25%, for whom Defendant produced employee names, time, and pay data. The formula was shared with Defendant's Counsel; and,

**WHEREAS**, Plaintiff's Counsel retained the services of a Ph.D. Economist to create a damages model, which includes a toggle to input estimated unpaid compensable time per day. Estimated damages calculated for the 25% sampling was extrapolated to cover all **292** Settlement Class Members according to their dates of employment. The model was shared with Defense counsel on June 14, 2021, and served as a basis for settlement and mediation negotiations; and,

**WHEREAS**, the exchange of documents and the damages model, along with related

---

[1] ECF No. 1.
[2] ECF No. 5.
[3] *See* ECF Nos. 10, 19, 26, and 33.
[4] ECF No. 36.
[5] ECF Nos. 12, 14, 16, 22-25, and 27-32.

DocuSign Envelope ID: E9DFB56F-163E-4726-A7D3-B945B1C135D4

discussions and debates between counsel enabled the Parties to understand and assess the detail and substance of their respective claims, counterclaims and defenses; and

**WHEREAS**, on June 21, 2021, the Parties participated in a mediation before Honorable Magistrate Judge Kemp and reached a settlement.[6]

**WHEREAS**, on July 29, 2021, the Parties notified the Court that in the process of preparing this Agreement, it was discovered that Defendant inadvertently failed to include some data from the information that was provided for mediation that was otherwise believed to be complete, that exclusion was unintended, that Counsel discussed the issue and were working on calculating an increase to the total settlement amount to account for the exclusion, and that they required more time to complete and file their approval papers;[7] and

**WHEREAS**, on August 20, 2021, the Parties notified the Court that the Parties conferred and Defendants provided all remaining outstanding names and dates of employment necessary for Plaintiffs' Counsel to update estimated damages calculations, that Plaintiffs' Counsel verified the calculations, and that their Joint Motion for Settlement Approval would be filed by September 3, 2021, or, as otherwise directed by the Court;[8] and

**WHEREAS**, Plaintiffs' Counsel's vendor verified the calculations for the increase in total settlement amount and such calculations were shared with Defendants' Counsel; and

**WHEREAS**, the settlement terms, including the increased damages and costs, are reflected in this Agreement which, subject to Court approval, will fully and finally settle and resolve this action and result in the dismissal of this lawsuit, with prejudice; and

---

[6] ECF Nos. 37 and 38.
[7] ECF No. 39.
[8] ECF No. 41.

DocuSign Envelope ID: E9D5B56E-163E-4726-A7D3-B945B1C135D4

**WHEREAS**, in order to avoid the burden, expense, risks and uncertainty of litigation, the Parties have agreed to settle, and resolve, subject to the terms of this Agreement, any and all claims that could be asserted in the Action; and

**WHEREAS**, Plaintiffs' Counsel investigated the facts relating to the claims alleged in the Action and have concluded that this Settlement, on the terms set forth in this Agreement, is fair, reasonable, adequate, and in the best interests of the Plaintiffs because: (1) there are numerous disputed issues of fact and law relating to the claims sought to be asserted in the Action; (2) there will be considerable expense and time necessary to prosecute the Action through trial, as well as risks, uncertainty, and costs of further prosecution; (3) it is possible that Plaintiff may not be able to maintain the Action as a certified collective action under the FLSA and may not successfully secure Rule 23 class certification for the Ohio claims; and (4) the relative benefits conferred upon the Plaintiffs under this Agreement are substantial.

**WHEREAS**, Defendant denies Plaintiff's allegations, and further denies any wrongdoing, or legal liability, under any federal, state, or local laws pertaining to payment of wages or compensation of any kind arising from any facts or conduct alleged in the Action, but has concluded: (1) further litigation would be protracted, expensive, and would divert management and employee time and attention; (2) there are uncertainties and risks inherent in the Action; (3) that settlement is fair, reasonable, adequate, and in the best interests of the Defendant; and (4) it is appropriate to fully and finally settle the Action in the manner, and upon the terms, set forth in this Agreement.

**NOW, THEREFORE**, **THE PARTIES AGREE,** in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration

provided for in this Agreement, and intending to be legally bound, to a full and complete settlement of the Action and release of all claims on the following terms and conditions:

## DEFINITIONS

For purposes of this Agreement, and wherever used in this Agreement, and in all of its exhibits, the terms set forth below shall have the following meanings:

1.      "Settlement Class Members" means the group of **313** individuals identified in the attached Exhibit A, consisting of Representative Plaintiff, Opt-In Plaintiffs, and present and former full-time hourly security officers, and those with similar duties but other titles, employed by Defendant during the period of September 15, 2017 to April 3, 2021, who suffered alleged damages based on data produced by Defendant, and who have not yet opted into the Action.

2.      "Opt-In Plaintiffs" means the 34 putative FLSA Class Members who joined this case prior to the date of this Agreement.

3.      "Plaintiffs' Counsel" means Nilges Draher LLC.

4.      "Covered Period" refers to the period from September 15, 2017 through April 3, 2021, which reflects the date range of time and pay data produced for mediation.

5.      "Court" means the United States District Court for the Southern District of Ohio.

6.      "Approval Order" means the Court's Order approving this Settlement.

7.      "Global Settlement Fund" means the gross settlement amount of **$99,386.12**, which is the total amount of funds available for payment to Plaintiffs for claims related to alleged unpaid and/or untimely payment of wages and other compensation, including alleged unpaid overtime, the Service Award, liquidated damages, attorneys' fees, and costs. The Global Settlement Fund does not include Defendant's share of the applicable employer tax withholdings. Settlement administration will be paid 50% by each side, with Plaintiffs' 50% being deducted from the

DocuSign Envelope ID: E9D5B56E-1C3E-4726-A7D3-B945B1G135D4

fund and Defendant's 50% paid by Defendant outside of the fund.

8.      "Net Settlement Fund" means the amount available for payments to the Plaintiffs, after deducting all attorneys' fees, costs, one-half (50%) of Settlement Administration, and the Service Award.

9.      "Settlement" means the Parties' resolution of the Action as to Plaintiff and the Settlement Class Members who cash their settlement checks.

10.      "Released Person(s)" means Defendant and any of its officers, directors, shareholders, employees, representatives, insurers, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with, any of these persons or entities, and their successors.

11.      "Released Claims" means, upon the Effective Date, Plaintiff and the Settlement Class Members who cash their settlement checks will release Defendant from the wage-and-hour claims contained in the Complaint, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses for the Covered Period. The Released Claims for the Covered Period become effective upon final approval of settlement by the Court.

12.      "Settlement Administrator" means Analytics Consulting LLC.

13.      "Settlement Administrator Costs" means all settlement administration fees, expenses, and costs incurred by the Settlement Administrator directly or indirectly related to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Global Settlement Fund and Net Settlement Fund, and those duties related to notice, check cutting and mailing, reports to counsel, court filings, legal and accounting advice relating to the

DocuSign Envelope ID: E9D5B56E-1C3E-4726-A7D3-B945B1G135D4

establishment of the Net Settlement Fund and tax treatment and reporting of awards to Plaintiffs, preparation of tax returns (and the taxes associated with such tax returns as defined below), calculating Settlement Awards, and any other related duties.

14. "Settlement Award" means the amount of the Net Settlement Fund calculated under Paragraph 43 of this Agreement that will be paid to each Settlement Class Member.

15. "Service Award" means the payment made from the Global Settlement Fund to Representative Plaintiff for her services in bringing and prosecuting the Action. The Service Award is subject to the Court's approval, and any amount that is not approved by the Court shall become part of the Net Settlement Fund.

16. "Notice of Settlement" means the forms approved by the Parties' Counsel, and subject to Court approval, that will be mailed *via* Standard U.S. mail to each Settlement Class Member, which will explain this Settlement and the claims process and provides each Settlement Class Member with the amount of his or her Settlement Award. Opt-In Plaintiffs will receive a copy of the Notice attached as **Exhibit B** and the Settlement Class Members who have not yet joined this case as of the date of this Agreement will receive a copy of the Notice attached as **Exhibit C**. These Notices will be accompanied by the Settlement Class Member's settlement payment. The Settlement Class Members who cash their settlement checks will agree to the release of claims described herein. Any unclaimed funds after settlement checks have been mailed will become stale after 180 days and will be returned to the Defendant. However, if any mailed Notice of Settlement is returned as undeliverable, the Settlement Class Member's Notice of Settlement shall be re-mailed and the Settlement Class Member shall have 45 days from any re-mailing of the Notice of Settlement to cash the settlement check.

17. "Effective Date" means the first day after the date on which the Court approves this

Settlement.

## NO ADMISSION OF LIABILITY

18.     Defendant denies liability or wrongdoing of any kind associated with the claims alleged in the Action. Consequently, this Agreement represents a compromise, and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendant or the Released Parties, for any purpose, or under any circumstance. This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

19.     If the Court does not approve this Settlement for any reason, the Parties will attempt to address the Court's concerns, and resubmit a revised agreement, if possible. If the Parties cannot agree on a revised agreement on their own, the Parties further agree to request that the disputed matter be referred to Magistrate Judge Kemp, for the purpose of helping the Parties resolve any disputes about the terms and conditions of any revised agreement to be re-submitted to the Court. If the Court does not approve a renegotiated agreement, this Agreement, or the re-negotiated agreement, shall be terminated as of the date of the Court's Order denying the same. Upon termination of this Agreement, or any renegotiated agreement:

      a.     This Agreement and, if applicable, the renegotiated agreement, shall have no force or effect and no Party shall be bound by any of its terms;

      b.     Nothing in this Agreement shall be used, or construed, by, or against, either

of the Parties as a determination, admission, or concession of any issue of law or fact in the litigation; and

c.      The Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation.

## CONSENT TO COURT-FACILITATED NOTICE

20.      For purposes of this Settlement only, the Parties consent to Court-facilitated notice of the settlement to the Settlement Class; they shall cooperate, and present to the Court for its approval, this Agreement, the proposed Court-facilitated notices attached as **Exhibits B** and **C**, and such information as may be reasonably requested by the Court for approving FLSA settlements and/or facilitated notice.

21.      The Parties will cooperate, and take all reasonably necessary steps, to effectuate final judicial approval of their intended settlement. More specifically, to the extent not already provided, Defendant agrees to share with the Settlement Administrator any information necessary to determine Settlement Awards and/or confirm the distribution of settlement amounts among the Settlement Class Members. Such information may include, but is not limited to, contact information, dates of employment, job titles, social security numbers and compensation data.

## SETTLEMENT TERMS AND CONDITIONS

22.      Because the Parties agree to use their best, reasonable efforts, and to fully cooperate with each other, to implement and effectuate the terms of this Agreement, to expedite the settlement administration process, the Parties' counsel are authorized to communicate directly with the Settlement Administrator.

23.     For purposes of this Settlement only, the Parties agree that Representative Plaintiff and the other Settlement Class Members are similarly situated under 29 U.S.C. § 216(b) of the FLSA.

24.     In exchange for Released Claims, Defendant will pay each Settlement Class Member a Settlement Award, as calculated under Paragraph 43 of this Agreement.

25.     For tax purposes, the Parties agree Settlement Awards will be: (a) 50 percent taxable, wage income paid under Internal Revenue Service ("IRS") Form W-2 and subject to ordinary payroll withholdings under federal and state law, and (b) 50 percent taxable, non-wage income paid under IRS Form 1099. Defendant will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund.

26.     Plaintiffs' Counsel may apply to the Court for a Service Award for Plaintiff in the amount of **$2,500.00** to be paid from the Global Settlement Fund, which Defendant agrees is reasonable and will not contest. The Service Award will be paid as wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings under federal and state law.

27.     Each Settlement Class Member will receive an IRS Form 1099 and Form W-2 reflecting the Settlement Award check(s) paid to him or her under this Agreement. Settlement Class Members will be responsible for any tax liability owed by them arising from the allocation of the Global Settlement Fund as attorneys' fees, costs, and expenses, Service Awards, taxable wage income, and taxable non-wage income.

## ATTORNEYS' FEES, COSTS, AND EXPENSES

28.     Plaintiffs' Counsel will seek an order from the Court approving the payment of their (a) fees for services, not to exceed one-third (1/3) of the Global Settlement Fund, and (b)

costs and litigation expenses, not to exceed a reasonable amount of costs and litigation expenses actually expended by, or on behalf of, Representative Plaintiff and the Settlement Class Members. Defendant agrees the requested fee is reasonable and will not contest this application. Any attorneys' fees, costs, and litigation expenses approved by the Court will be paid from the Global Settlement Fund, except for 50% of settlement administrative costs paid separately by Defendant.

## SETTLEMENT ADMINISTRATOR & ADMINISTRATOR COSTS

29.  The Parties agree to retain a Settlement Administrator responsible for:

a.  Issuing all funds from the Global Settlement Fund;

b.  Determining and finalizing the Settlement Awards and the tax withholding amounts and employer payroll tax amounts for Settlement Class Members, as applicable;

c.  Preparing, printing, and disseminating the Notices of Settlement and Settlement checks (or other negotiable instrument) to all Settlement Class Members;

d.  Promptly apprising the Parties' Counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their counsel, and copying the Parties' counsel on material correspondence;

e.  Wiring Plaintiffs' Counsel's attorneys' fees, expenses, and costs;

f.  Mailing the Service Award to Representative Plaintiff in accordance with this Agreement and Order of the Court;

g.  Issuing IRS Forms W-2, 1099, and W-9 (if required) for all payments to each Settlement Class Member;

h.  Ascertaining current addresses and addressees' information for each Notice of Settlement returned as undeliverable;

i.  Responding to inquiries by Settlement Class Members regarding the terms of Settlement;

j.  Referring to Plaintiffs' Counsel all inquiries by Settlement Class Members the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;

k.      Promptly notifying the Parties' counsel of any material requests or communications made by any Settlement Class Member who receives the Notice of Settlement;

l.      Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and other communications, and attempted communications, with Settlement Class Members, and providing the Parties' counsel with weekly reports regarding the same;

m.      Confirming, in writing to the Parties' counsel and the Court, its completion of the administration of this Settlement and retaining copies of all endorsed Settlement checks; and

n.      Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

30.     Settlement Administrator Costs shall be paid with 50% being deducted from the fund and 50% paid by Defendant outside of the fund.

**SETTLEMENT ADMINISTRATION TIMELINE**

31.     Within 7 days of the Effective Date, the Settlement Administrator shall open an interest-bearing bank account, which will hold the Global Settlement Fund.

32.     Within 21 days of the Effective Date, the Settlement Administrator shall send Plaintiff's Counsel its attorneys' fees and costs.

33.     Within 21 days of the Effective Date, the Settlement Administrator shall send Representative Plaintiff her Service Award.

34.     Within 14 days of the Effective Date, Defendant will provide the Settlement Administrator with an Excel spreadsheet with updated contact information for any Settlement Class Member that did not already opt-in to the Action as of the date of this Agreement. This will be called the "Data Delivery Date". The information included will include the names, social security numbers, and last known mailing addresses and email address. Using the information

DocuSign Envelope ID: E9BFB56F-1G35-4726-A7D2-B04531G135D4

already in its possession from original notice and the forgoing updating information from Defendant, the Settlement Administrator shall attempt to confirm the accuracy of the Settlement Class Members' addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement to any updated address obtained therefrom.

35.     Within <u>10 days</u> of the Data Delivery Date, as directed by the Settlement Administrator, Defendant shall deposit **$99,386.12** into the interest-bearing bank account opened by the Settlement Administrator.

36.     Within <u>20 days</u> of the Data Delivery Date, the Settlement Administrator shall mail to all Settlement Class Members the respective Notices of Settlement and Settlement Awards as identified in **Exhibits A** to **C**. If any Notice of Settlement is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Settlement Class Members through other reasonable and legally acceptable means, and, if located, shall promptly mail an additional Notice of Settlement to such person. Any Notice of Settlement returned as undeliverable may be traced up to two times to obtain a new address and be re-mailed by Standard Mail. In no event shall any Notice of Settlement be mailed, or re-mailed, to any Settlement Class Member by the Settlement Administrator after <u>90 days</u> have elapsed from the date Notice of Settlement is initially mailed under this Paragraph.

37.     Within <u>90 days</u>, and then again at <u>120 days</u>, after initial mailing under Paragraph 36, the Settlement Administrator shall mail a reminder postcard to Settlement Class Members who have not cashed their Settlement Award checks.

38.     Each Settlement Class Member shall have <u>180 days</u> from the date Notice of Settlement is initially mailed under Paragraph 36 of this Agreement to cash their Settlement Award checks. But if any mailed Notice of Settlement and Settlement Award check is returned as

undeliverable, the Settlement Class Member to whom it was directed shall have until the end of the original 180 days or until 90 days from any re-mailing of the Notice of Settlement to submit a Claim Form, whichever is longer.

39.     If possible, the Settlement Administrator will issue each Settlement Class Member one single check representing the total amount of his or her Settlement Award by combining the wage and non-wage portions of his or her Settlement Award. In accordance with the withholding and reporting requirements set forth in this Agreement, the Settlement Administrator shall report the wage income payments to the IRS on IRS Form W-2 and shall report the non-wage income on IRS Form 1099.

## GLOBAL SETTLEMENT FUND & TAXES

40.     The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.,* and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

41.     The Settlement Administrator shall serve as Trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

42.     The Parties recognize the wage and non-wage awards to Plaintiff and Settlement Class Members will be subject to applicable tax withholding and reporting and employer payroll taxes. The Settlement Administrator shall calculate the employer's share of payroll taxes related to Settlement Award payments treated as wage income and, upon receipt of that calculation, Defendant will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from the Global Settlement Fund to pay the employers' share of payroll taxes related to Settlement Award payments treated as wage income.

43.     All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

44.     The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other

costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes, as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

## SETTLEMENT AWARD CALCULATION

45.     As outlined above, and as part of the mediation process, for the purposes of mediation, Defendant provided Plaintiff's Counsel with a list of 292 employee IDs and dates of employment. Per agreement, Plaintiff's Counsel then applied an Excel randomizing formula to the list to select 25%, for whom Defendant produced employee names, time, and pay data. The formula was shared with Defendant's Counsel.

46.     Plaintiff's Counsel retained the services of a Ph.D. Economist to create a damages model, which includes a toggle to input estimated unpaid compensable time per day. Estimated damages calculated for the 25% sampling was extrapolated to cover all 292 Settlement Class Members.

47.     The model was shared with Defense counsel and served as a basis for settlement and mediation negotiations.

48.     After mediation, Defendant supplemented the original list with names, IDs, and dates of employment resulting in the complete list of 313 Settlement Class Members.

49.     Settlement Awards to each Settlement Class Member were calculated by Plaintiffs' Counsel, and will be finalized by the Settlement Administrator, by using the respective member's *pro rata* share of the Net Settlement Fund based on their dates of employment.

## REMAINDER OF THE GLOBAL SETTLEMENT FUND

50.     All Settlement Award checks that are not negotiated by a Settlement Class Member within <u>180 days</u> of date issuance, as noted in the Settlement Notices and on the Settlement Award

checks mailed by the Settlement Administrator to the Settlement Class Members, shall be null and void, and such funds shall be returned to Defendant.

51.     The Parties agree that any funds remaining in the interest-bearing bank account holding the Global Settlement Fund <u>181 days</u> after the issuance of Settlement Award checks under Paragraph 36 of this Agreement shall be paid by the Settlement Administrator to Defendant. Any such payment under this paragraph shall be made within <u>190 days</u> after the issuance of Settlement Award checks under Paragraph 36 of this Agreement.

## NOTICES

52.     All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses:

| **Plaintiffs' Counsel:** | **Defendant's Counsel:** |
|---|---|
| Robi. J. Baishnab | Barbara Letcher, Of Counsel |
| Shannon M. Draher | 485 Metro Place South, Suite 220 |
| Hans A. Nilges | Dublin, Ohio 43017 |
| 7266 Portage Street, N.W. | Telephone: (614) 764-1444 |
| Suite D | Email: bletcher@myglaw.com |
| Massillon, Ohio 44646 | |
| Tel: (330) 470-4428 | |
| rbaishnab@ohlaborlaw.com | |
| sdraher@ohlaborlaw.com | |
| hans@ohlaborlaw.com | |

## CONSTRUCTION, INTERPRETATION AND MODIFICATION

53.     This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement and it shall supersede all prior and contemporaneous negotiations between the parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement, or any specific term

DocuSign Envelope ID: E9BEB56E-1C35-4726-A7D2-B94531E135D4

or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

54.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

55.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

56.     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Ohio, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, and shall be subject to the continuing jurisdiction of the United States District Court for the Southern District of Ohio.

57.     If any provision of this Agreement, except the Release, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable the remaining portions of this Agreement will remain in full force and effect to the extent the effect of this Agreement, as well as the obligations of the Parties, remains materially the same.

58.     This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel. This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same

instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

59.     This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of Defendant as well as its present and former owners, stockholders, predecessors, successors, joint ventures, assigns, agents, insurers, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with, any of them.

## CONTINUING JURISDICTION

60.     The Parties agree that their Joint Motion for approval will ask that the Court retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

61.     The Parties agree that if, at any time, a violation of any term of this Agreement is asserted by either party, that party shall have the right to seek specific performance of that term and/or any other necessary and proper relief, including, but not limited to, damages, from a court of competent jurisdiction, and the prevailing party shall be entitled to recover its reasonable attorneys' fees and reasonable costs.

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

Date: 8/27/2021

Sasha Alleman
On behalf of herself and the Class Members

Date: _____

LPS Services, LLC

By:_____

Its:_____

DocuSign Envelope ID: E9DFB56E-1C3E-4726-A7D3-B04521C135D4

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

Date: 8/27/2021

Sasha Alleman
On behalf of herself and the Class Members

Date: 8/30/21

LPS Services, LLC

By: Danielle Jurnak

Its: CEO

# EXHIBIT A
## Settlement Class List

| No. | Employee Name | Settlment Award |
|---|---|---|
| 1 | ALBRIGHT, MARY JUNE | $148.08 |
| 2 | ALEXANDER, AUTOM D | $366.88 |
| 3 | ALLEMAN, SASHA RAE | $99.90 |
| 4 | Aloe, Erica | $238.03 |
| 5 | ANDERSON, JERI LYNN | $69.40 |
| 6 | ANDRENOK, STEPHANIE LEIGH | $572.87 |
| 7 | ASHCRAFT, JORDAN P | $426.12 |
| 8 | BAILEY, HEATHER | $123.77 |
| 9 | BARNARD, NOVEMBER | $89.73 |
| 10 | Barnett, Casey | $131.28 |
| 11 | Barr, Patsy | $87.26 |
| 12 | BARTH, JOSHUA M | $496.40 |
| 13 | BEST (Fredricks), TABETHA M. | $225.44 |
| 14 | BILLINGS, HARRY | $186.98 |
| 15 | BINDUS, DIANA L | $384.57 |
| 16 | BIRCHER, BRANDI NICOLE | $297.04 |
| 17 | BLAKE, MICHAEL R | $556.07 |
| 18 | BODVAKE, SHEREE M | $150.29 |
| 19 | Bogden, Nicolette | $28.29 |
| 20 | Bradley, Melissa | $136.15 |
| 21 | BRILL, KENYA N | $64.98 |
| 22 | Browell-Bradley, Laura | $323.57 |
| 23 | Brown, Rodney | $320.91 |
| 24 | BROWN, TIMOTHY EDWARD | $488.44 |
| 25 | Brown, William | $71.85 |
| 26 | BUCHANAN, TIMOTHY DALE | $26.08 |
| 27 | Burk, Amber | $30.50 |
| 28 | Burkett, David | $358.93 |
| 29 | Burkett, Mary | $358.93 |
| 30 | Burnsworth, Jessica | $128.41 |
| 31 | Butler, Mackenzie | $79.62 |
| 32 | CALVERT, MISTY DAWN | $58.35 |
| 33 | CAMPBELL, BONNIE C. | $333.29 |
| 34 | Carothers, Meagan | $77.08 |
| 35 | CARTRIGHT, CONNIE | $287.76 |
| 36 | Chambers, Lee Ann | $197.15 |
| 37 | Chambers, Valerie | $74.89 |
| 38 | Chase, Michael | $123.54 |
| 39 | Childers, Beverly | $248.86 |
| 40 | CHOJNICKI, PHILLIP M. | $572.87 |
| 41 | Clark, Elizabeth | $69.17 |
| 42 | CLAY, KAITLYN A | $301.46 |

| 43 | Clements, Chelsie | $136.15 |
|---|---|---|
| 44 | Collins, Stacie | $171.51 |
| 45 | CONLEY, AUSTIN K | $515.85 |
| 46 | COOMBS, MELISSA D | $546.35 |
| 47 | Cooper, Cody | $135.26 |
| 48 | Copen, Faith | $135.53 |
| 49 | Corwin, Jordan | $331.96 |
| 50 | Covill, Patrick | $55.25 |
| 51 | COX, JENNIFER K | $478.28 |
| 52 | Crawford, Archie | $149.85 |
| 53 | CROMWELL, KELLY LEE | $371.30 |
| 54 | Dabbs, Kevin | $77.48 |
| 55 | DAUGHERTY, JOSHUA J | $114.93 |
| 56 | DENBOW, DANIEL N | $96.36 |
| 57 | DERBY, SHAWN W | $103.88 |
| 58 | DEYNZER, KEVIN BJORN | $572.87 |
| 59 | Doty, Ryan | $85.99 |
| 60 | DRENNEN, LUCAS L. | $276.27 |
| 61 | Drummond, Ruth | $73.08 |
| 62 | Dulkoski, Megan | $192.54 |
| 63 | EADS, JESSICA MIRIAH | $340.36 |
| 64 | EBERT, CHERYL LYNN | $488.44 |
| 65 | EBERT, DAVID | $46.41 |
| 66 | ECKERT, ERICA SUE | $450.87 |
| 67 | Edgell, Bobbi | $64.74 |
| 68 | EILAM, BRUCE MAURICE | $488.44 |
| 69 | Elkins, Tracy | $316.94 |
| 70 | Elmer-Ayers, Summer | $135.26 |
| 71 | ENGLE, KIRBY RAY | $161.78 |
| 72 | Everly, Jenny | $171.51 |
| 73 | Everson, Jessica | $96.14 |
| 74 | Farmer, William | $176.81 |
| 75 | Farnsworth, Michelle | $127.75 |
| 76 | Fisher, Cindy (aka Redmond) | $271.85 |
| 77 | Fluharty, Shannan | $144.43 |
| 78 | Fonner, Leeann | $80.89 |
| 79 | Forgen, Pete | $86.64 |
| 80 | FOSTER, GREG A | $114.04 |
| 81 | Fox, Steffany | $138.11 |
| 82 | Fox, Suzanne | $155.15 |
| 83 | Frazier, Benton | $100.99 |
| 84 | Fuller, David | $204.82 |
| 85 | Furbee, John | $152.74 |
| 86 | FURLONG, NICOLE E. | $148.08 |

DocuSign Envelope ID: E9BFB56F-1G35-4720-A7D2-B04531G135D4

| | | | | | | |
|---|---|---|---|---|---|---|
| 87 | FURY, ANTHONY M | $193.61 | | 131 | Klug, Donald (TRACE) | $73.65 |
| 88 | GABELETTO, MATTHEW ALLEN | $481.81 | | 132 | Kovalski, Beth | $128.41 |
| 89 | GALLAGHER, ERIC H | $282.90 | | 133 | Krause, Cheryl | $165.15 |
| 90 | Garner, Sarah | $72.18 | | 134 | LaMaster, Nancy | $137.73 |
| 91 | GARRETT, CHEYENNE LYNN | $380.59 | | 135 | Leibig, John | $78.81 |
| 92 | Garrett, Kelley | $62.91 | | 136 | Lemasters, Jasmine | $145.19 |
| 93 | Gavazzi, Faith | $83.28 | | 137 | Lemasters, Priscilla | $62.97 |
| 94 | Gaydos, Mark | $177.25 | | 138 | Lesane, Darrel | $193.83 |
| 95 | Gibbons, Alexus | $71.85 | | 139 | Lewellen, Cassandra | $115.37 |
| 96 | Gormley, Joseph | $117.34 | | 140 | Lilley, Bruce | $197.40 |
| 97 | GOTTSCHALK, THOMAS A | $543.25 | | 141 | Lincoski, Deric | $89.51 |
| 98 | Grayson, Amanda | $188.30 | | 142 | Linton, Timothy | $74.92 |
| 99 | Green, Debra | $158.54 | | 143 | LOGAN, DAVID E | $65.86 |
| 100 | Green, Joseph | $119.57 | | 144 | Logue, Jared | $115.55 |
| 101 | Gregg, Brandy | $384.12 | | 145 | Loy, Timothy | $101.85 |
| 102 | Griffith, Andrew | $178.14 | | 146 | Lubawy, Francis | $81.09 |
| 103 | Grimes, Cassandra | $70.10 | | 147 | Lucas, Colin | $131.39 |
| 104 | HEADLEY, CODY ALLEN | $572.87 | | 148 | Luchini, Amelia | $65.42 |
| 105 | Heintzman, Joseph | $96.99 | | 149 | Luchini, Chris | $163.11 |
| 106 | Helfferich, Logan | $99.16 | | 150 | LYDICK, BRENDA LEE | $308.98 |
| 107 | Hetrick, Kayla (aka Sumey) | $289.09 | | 151 | Lynch, Nancy Jane | $86.01 |
| 108 | HOLPP, JOHN WILLIAM | $469.44 | | 152 | Magers, Joseph | $87.26 |
| 109 | Holt, Anna | $254.81 | | 153 | Magyar, Deryk | $108.92 |
| 110 | Hood, Tabetha | $91.94 | | 154 | Martin, Alisha | $138.59 |
| 111 | Hooper, Erica | $71.88 | | 155 | Mason, Kierstin | $265.66 |
| 112 | Hopkins, Rachel | $138.63 | | 156 | Massengill, Jessie | $295.05 |
| 113 | Hose, Ashley | $139.48 | | 157 | Masters, Jason | $143.49 |
| 114 | Hunter, Albert | $113.34 | | 158 | Mathers, Rhonda | $82.66 |
| 115 | Ingram, Felisha | $82.22 | | 159 | MATTEI, NICKLAS ALAN | $436.28 |
| 116 | JACKSON, MELVIN R | $20.33 | | 160 | Mayle, Karen | $87.67 |
| 117 | Jenkins, Bobbie Jo | $118.15 | | 161 | McConnell, Miranda | $70.02 |
| 118 | Jenkins, Stephanie | $292.75 | | 162 | McCoy, Emma | $190.07 |
| 119 | Job, Theresa | $85.88 | | 163 | MCCULLOUGH, CHRYSTAL RENEE | $29.17 |
| 120 | Johnson, James | $149.85 | | 164 | Mcfadden, Audra | $76.73 |
| 121 | Johnson, Theo | $94.79 | | 165 | Meadows, Donald | $55.51 |
| 122 | Johnson, Zachary | $75.34 | | 166 | Merchant, Kevin | $152.72 |
| 123 | Jordan, Casey | $66.98 | | 167 | Metcalf, Alex | $141.45 |
| 124 | Justice, Harley | $97.48 | | 168 | Michael, Scott | $118.28 |
| 125 | Kalaski, Kylee (aka Bowden-Kalaski) | $222.54 | | 169 | Milburn, William | $518.94 |
| 126 | Keller, Robert | $171.69 | | 170 | Miles, Arieane | $54.55 |
| 127 | Kemp, Andrew | $119.59 | | 171 | MILLER, CHARLES WAYNE | $194.94 |
| 128 | Kennedy JR, James | $195.82 | | 172 | Miller, Thomas | $136.15 |
| 129 | KENNEDY, JAMES R | $572.87 | | 173 | Mitchell, Emily | $94.15 |
| 130 | Kirk, Chad | $183.11 | | 174 | Molisee, Carl | $118.17 |

DocuSign Envelope ID: E9BFB56E1G35-4786-A7D2-B94531C135D4-

| | | | | | | |
|---|---|---|---|---|---|---|
| 175 | Moman, Kenisha | $84.96 | | 219 | Richmond, Nick | $250.19 |
| 176 | Monn, Jacob | $100.14 | | 220 | Ridgley, Kevin | $289.09 |
| 177 | Montgomery, karin | $51.59 | | 221 | Ring, Randi | $55.70 |
| 178 | Montgomery, Travis | $59.52 | | 222 | Roach, John | $161.78 |
| 179 | Moore, Harry | $373.07 | | 223 | Robinson, Justin | $49.51 |
| 180 | Moore, Ole | $276.71 | | 224 | Rodriguez, Chastity | $91.94 |
| 181 | Moran, Jennifer | $73.58 | | 225 | Rogale, Sarah | $90.17 |
| 182 | Morrison, Aaron | $55.03 | | 226 | Rogers, Andrew | $89.95 |
| 183 | Mortakes, Casey | $65.22 | | 227 | Rose, Richard | $45.53 |
| 184 | Moss, Joshua | $369.98 | | 228 | Rozzell, Ken | $247.54 |
| 185 | Mouser, David | $163.11 | | 229 | RUBLE, TONYA S | $142.33 |
| 186 | MUIR, JAMES KEITH | $572.87 | | 230 | Ruckman, Tiffany | $61.44 |
| 187 | Myers, James | $67.00 | | 231 | Ruperto, Sherl | $52.60 |
| 188 | Myers, Kathy | $50.83 | | 232 | Rutan, Chasity | $112.72 |
| 189 | Myers, Kayla | $74.46 | | 233 | Ryan, Alyssa | $177.25 |
| 190 | NALLEY, GENE W | $80.45 | | 234 | SALSBERRY, CHARLES MICHAEL | $67.63 |
| 191 | Natali, Jamie | $173.46 | | 235 | Saniga, Brook | $251.07 |
| 192 | Nichols, Rachelle | $77.80 | | 236 | Saniga, Stanley | $86.20 |
| 193 | Novotny, Theresa | $214.83 | | 237 | SanNicolas, Teresa | $276.71 |
| 194 | Oravec, Shane | $78.97 | | 238 | Santella, Tristan | $224.99 |
| 195 | ORNDOFF, JUSTYN ELLIOT | $572.87 | | 239 | SANTORO, RONALD J | $572.87 |
| 196 | Orr-Alexander, Dawn | $366.88 | | 240 | Santucci, Karen | $138.80 |
| 197 | OWENS, CATHY | $83.10 | | 241 | Schaney, Alivia | $48.18 |
| 198 | Palmer, Murven | $50.39 | | 242 | Schoedel, Blake | $156.92 |
| 199 | Pasterick, Paul | $227.20 | | 243 | SCRIP, JOSEPH P | $53.93 |
| 200 | Patrick, Sam | $204.66 | | 244 | SELL, DAVID W | $130.84 |
| 201 | Pattison, Chloe | $169.07 | | 245 | SHAFFER, DUSTIN R | $58.79 |
| 202 | Patton, Sheila | $90.17 | | 246 | SHALLENBERGER, SHELBY N | $91.06 |
| 203 | Pendland, Kayla | $79.12 | | 247 | SHOW, ROBERT L | $572.87 |
| 204 | PHILLIPS-JORDAN, SAMANTHA MAE | $205.10 | | 248 | Shreve, Dorsey | $275.83 |
| 205 | Plank, James | $135.44 | | 249 | Sines, Kimberly | $190.51 |
| 206 | PLETCHER, TERRI L. | $572.87 | | 250 | SINGLETON, GERTRUDE M | $182.12 |
| 207 | Plum, Ernest | $168.58 | | 251 | Smith, Betty Jo | $500.82 |
| 208 | Pomplas, Leigh | $56.32 | | 252 | SMITH, TRACY JO | $207.75 |
| 209 | Price, Sapphire | $127.51 | | 253 | SMITHBERGER, ASHLEY D | $59.23 |
| 210 | Prout, Courtney | $55.01 | | 254 | SMOLK, CRYSTAL LYNN | $187.86 |
| 211 | Pugh, Charles | $125.74 | | 255 | SNYDER, BEVERLY K | $572.87 |
| 212 | Quinn, Barbara | $330.20 | | 256 | SPEER, ASHLEY MARIE | $170.62 |
| 213 | Raber, Joseph | $64.54 | | 257 | STALEY, MELANIE MARIE | $98.13 |
| 214 | Rankin, Trina | $147.20 | | 258 | STANFORD, BRUCE W | $124.21 |
| 215 | Ray, Brittany | $177.70 | | 259 | STATLER, TROY G | $232.51 |
| 216 | Reckner-Karkowski, Renea | $72.05 | | 260 | STEWART, IVY S | $49.51 |
| 217 | Reppart, Matthew | $68.96 | | 261 | STEWART, TRACEY LYNN | $144.10 |
| 218 | Richards, Andrew | $118.46 | | 262 | STORMAN SHELDON, JESSICA MAE | $505.68 |

| 263 | Stout, Teresa | $117.58 |
| 264 | Straight, Kevin | $45.97 |
| 265 | stull, Angela | $77.80 |
| 266 | Stump, Anthony | $172.83 |
| 267 | Stutler, Dakota | $61.44 |
| 268 | Sullivan, Earl | $113.60 |
| 269 | Summers, Ashley | $91.94 |
| 270 | Sutton, Cecily | $75.15 |
| 271 | Swaney, Brandon | $92.38 |
| 272 | Taylor, Bernard | $264.78 |
| 273 | Tennant, Braxtin | $94.15 |
| 274 | Thomas, Morrison | $135.26 |
| 275 | Thomas, Steven | $58.35 |
| 276 | THOMPSON, LIEBE H | $419.93 |
| 277 | Thompson, Shannon | $102.99 |
| 278 | Tomey, Daniel | $134.82 |
| 279 | Tomlin, Bret | $61.44 |
| 280 | Trozzo, Gene | $92.38 |
| 281 | Tucker, Brady | $76.91 |
| 282 | Tucker, Misty | $45.97 |
| 283 | TUKESBREY, MELISSA JO | $159.13 |
| 284 | Turklay, Shelley | $259.47 |
| 285 | Tweed, Kevin | $281.57 |
| 286 | Utter, Carlton | $384.12 |
| 287 | Utter, Cynthia (100813) | $149.85 |
| 288 | Valenti, Michael (100066) | $143.66 |
| 289 | Van Meter, Chris (101028) | $218.68 |

| 290 | VARNER, DYLAN C | $488.44 |
| 291 | Volkar, Jeffrey (100935) | $275.51 |
| 292 | Wade, Eric (101316) | $117.38 |
| 293 | Wagner, Jr, James (100819) | $295.28 |
| 294 | WALLACE, DENA L | $112.28 |
| 295 | Watters, Travis (100871) | $186.64 |
| 296 | White, Tim (101066) | $239.27 |
| 297 | Whoolery, Brittany (100421) | $141.89 |
| 298 | Wiant, Misty (101503) | $341.87 |
| 299 | Williams, Flyzel (101200) | $127.98 |
| 300 | Williams, Miranda (101543) | $72.34 |
| 301 | WILMOTH, RALPH R | $381.91 |
| 302 | Wilson, Jacob A (101120) | $83.27 |
| 303 | Wilson, Paige (101279) | $72.77 |
| 304 | Wilson, Sonya (101019) | $102.33 |
| 305 | Wise, Katelyn | $79.79 |
| 306 | Wolfe, Devin (101057) | $79.80 |
| 307 | Wright, Katelyn (101118) | $139.44 |
| 308 | Yantek, Megan (101302) | $70.52 |
| 309 | Yeager, Alisha (101119) | $97.91 |
| 310 | YEATER, ALISHIA D | $423.02 |
| 311 | Youkers, Kaitlin (100967) | $57.68 |
| 312 | Zesiger, Makala (101259) | $47.55 |
| 313 | Zyhowski, Thomas (101375) | $69.21 |

| | Total | $56,845.80 |
| | Average | $181.62 |

v

# EXHIBIT B
## Settlement Notice to Opt-ins

# NOTICE OF SETTLEMENT OF COLLECTIVE ACTION
## *Alleman, Sasha v. LPS Services, LLC*

## YOUR SETTLEMENT PAYMENT IS ENCLOSED

**You are receiving this notice because you previously submitted a Consent to Join form in this Case. You are receiving this Notice as part of a settlement in this Case. The Court has approved this notice.**

The Parties have entered into this settlement solely with the intention of avoiding further disputes and litigation with the attendant inconvenience and expense.

Under the allocation formula created by the settlement, you are receiving the enclosed settlement check of $_____.  The allocation formula and your settlement share have been approved by the Court.

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **CASHING THE CHECK** | By cashing the enclosed check by [180 days from mailing], you agree to participate in the settlement and to release your claims as further described below. Checks not cashed by [180 days from mailing] become stale and the funds will be returned to LPS Services. |
| **NOT CASHING THE CHECK** | If you do not wish to participate in or be bound by the settlement, including the release described below, you should not cash the enclosed check. Checks not cashed by [180 days from mailing] become stale and the funds will be returned to LPS Services. By not cashing the enclosed settlement check by [180 days from mailing], you agree to withdraw your previously filed Consent to Join and will thereby be excluded from settlement. |

## CONTINUE CAREFULLY READING THIS NOTICE IN ITS ENTIRETY.

2

DocuSign Envelope ID: E9BEB56E-1G35-4726-A7D2-B94531E135D4

## BASIC INFORMATION

| 1. Why did I get this notice? |
|---|

You have received this notice because you submitted a Consent to Join form in this case that was filed with the Court. The Court overseeing the lawsuit is the United States District Court for the Southern District of Ohio, Eastern Division, Judge Michael H. Watson. The lawsuit is known as *Alleman, Sasha v. LPS Services, LLC*, Case No. 2:20-cv-4830.

The Court ordered that you be sent this Notice because you have a right to know about the settlement of this collective action lawsuit that affects your rights. This Notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

| 2. What is the lawsuit about? |
|---|

This lawsuit is about whether Defendant failed to pay certain overtime wages for hours worked in excess of 40 hours in a given workweek. Specifically, the lawsuit alleged that Defendant had a company-wide policy that requires the Settlement Class Members, like yourself, to always arrive at least 10 minutes prior to their start time to allow for proper change of shift procedures, such as receiving a shift change report and attending a safety meeting, but does not pay for this work which resulted in unpaid overtime. The Court has not made any ruling on the merits of the claims.

| 3. What is a collective action? |
|---|

In a "Collective Action," one or more people called "Representative Plaintiffs" sue on behalf of people who have similar claims. When other employees who have similar claims opt into the Collective Action, they become "Collective Members" or "Opt-in Plaintiffs." You have already opted into this lawsuit. For the purposes of this settlement, you may participate in the settlement by cashing the enclosed settlement check by [180 days from mailing]. By cashing the enclosed settlement check, you are agreeing to release claims against Defendant, as explained below.

| 4. Why is there a settlement? |
|---|

The Court did not decide in favor of Representative Plaintiff or Defendant. The Parties agreed to this settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. That way, they avoid the cost of a trial, and the people affected will get compensation.

## WHO IS IN THE SETTLEMENT?

| 5. How do I know if I will be included in the settlement? |
|---|

You are part of the settlement because you are an Opt-in Plaintiff who worked for LPS Services as present or former full-time hourly security officer, or someone with similar duties but other title, employed by Defendant during the period of September 15, 2017 to April 3, 2021. You are receiving this notice and the enclosed settlement check because you are eligible to participate in settlement.

**6. I'm not sure if I want to be included.**

If you are still not sure whether you would like to be included, you can ask for free help. You can contact the attorneys for the Plaintiff as follows:

Robi J. Baishnab
Shannon M. Draher
Nilges Draher LLC
7266 Portage Street NW
Suite D
Massillon, OH 44646
(234) 401-9089

**THE SETTLEMENT BENEFITS – WHAT YOU GET**

**7. What does the settlement provide?**

Defendant has agreed to pay $99,386.12 to be utilized to pay monies to Settlement Class Members like yourself. The settlement amount will be used to pay settlement payments, Court-approved attorneys' fees and costs, one-half of the settlement administrative costs, Court-approved service payment to the Representative Plaintiff, Sasha Alleman.

After subtracting the foregoing costs and fees, the remaining settlement funds was divided proportionately among Settlement Class Members, including you, based your proportional share of damages as calculated from the number of weeks you worked during the Covered Period. Should you not participate by cashing the enclosed settlement check by [180 days from mailing], your portion will be returned to LPS Services and your previously filed Consent to Join form will be deemed withdrawn.

**8. How much will my payment be and how was it calculated?**

Based on the formula that has been approved by the Court, the enclosed check is for your proportional share of $_____. Half of this amount is subject to deductions for applicable taxes and withholdings like a standard paycheck and for which you will receive a W-2. The other half reflects a non-wage payment that will be reported on an IRS Form 1099. The allocation formula takes into account the number of weeks you worked for Defendant. The Settlement Agreement contains the exact allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 12 below.

**RELEASE OF CLAIMS**

**9. What am I giving up if I cash the settlement check by [180 days from mailing]?**

Once you cash the enclosed settlement check by [180 days from mailing], you agree to be bound by the terms of settlement, including releasing LPS Services from the wage-and-hour claims contained in the Complaint, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses for the period from September 15, 2017 through April 3, 2021, which reflects the date range of time and pay data produced for mediation.

DocuSign Envelope ID: E9BFB56E-1G35-4726-A7D2-B94531E135D4

This means you cannot sue, continue to sue, or be a party in any other lawsuit against LPS Services relating to the claims at issue in this case during the time period covered by the Settlement. It also means that all of the Court's orders will apply to you and legally bind you. If you do not cash the enclosed settlement check by [180 days from mailing], you will not participate in the settlement, you will not receive any other payment, and you will not be bound by the Court's orders.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

As an Opt-in Plaintiff, you are already represented by Nilges Draher LLC. These lawyers are called "Plaintiff's Counsel." You will not be charged for these lawyers. You can find more information about Plaintiff's Counsel at http://www.ohlaborlaw.com/.

You do not need to retain your own attorney in order to participate in the settlement.

### 11. How will the lawyers be paid?

The Court has approved payment of $33,128.71 for attorneys' fees, which is one-third (1/3) of the total settlement amount, plus $3,777.11 in attorneys' actual out-of-pocket costs. These amounts compensate Plaintiff's Counsel for investigating the facts, litigating the case, negotiating the settlement, and reimburse Plaintiff's Counsel's out-of-pocket costs.

## GETTING MORE INFORMATION

### 12. How do I get more information?

If you have other questions about the settlement, you can contact your attorneys at the address and/or telephone number below.

Robi J. Baishnab

Shannon M. Draher

Nilges Draher LLC

7266 Portage Street NW

Suite D

Massillon, OH 44646

(234) 401-9089

# EXHIBIT C
## Settlement Notice to Non-Opt-ins

DocuSign Envelope ID: E9BFB56E1C35-4726-A7D3-B94531C135D4

## NOTICE OF SETTLEMENT OF COLLECTIVE ACTION
### _Alleman, Sasha v. LPS Services, LLC_

## YOUR SETTLEMENT PAYMENT IS ENCLOSED

**You are receiving this notice because you are entitled to participate in a Collective Action settlement. Thus, you are receiving this Notice as part of a settlement in this Case. The Court has approved this notice.**

A former full-time hourly security officer of LPS Services filed a lawsuit against LPS Services, LLC alleging that LPS Services failed to pay her and others like her for all hours worked, which allegedly resulted in unpaid overtime in violation of the Fair Labor Standards Act. LPS Services denies any such failure and believes that it paid its employees accurately and lawfully. The Parties have entered into a settlement solely with the intention of avoiding further disputes and litigation with the attendant inconvenience and expense.

Under the allocation formula created by the settlement, you are receiving the enclosed settlement check of $_____. This allocation formula and your settlement share have been approved by the Court.

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **CASHING THE CHECK** | By cashing the enclosed check by [180 days from mailing], you agree to participate in the settlement and to release your claims as further described below. Checks not cashed by [180 days from mailing] become stale and the funds will be returned to LPS Services. |
| **NOT CASHING THE CHECK** | If you do not wish to participate in or be bound by the settlement, including the release described below, you should not cash the enclosed check. Checks not cashed by [180 days from mailing] become stale and the funds will be returned to LPS Services. |

## CONTINUE CAREFULLY READING THIS NOTICE IN ITS ENTIRETY.

DocuSign Envelope ID: E9BFB56F1G35472&A7D3-B04531E135D4

## BASIC INFORMATION

**1. Why did I get this notice?**

You have received this notice because LPS Services identified you as a present or former full-time hourly security officer, or someone with similar duties but other title, employed by Defendant during the period of September 15, 2017 to April 3, 2021.

The Court overseeing the lawsuit is the United States District Court for the Southern District of Ohio, Eastern Division, Judge Michael H. Watson. The lawsuit is known as *Alleman, Sasha v. LPS Services, LLC*, Case No. 2:20-cv-4830. The person who filed the lawsuit is called the "Representative Plaintiff." The "Defendant" is LPS Services, LLC.

The Court ordered that you be sent this Notice because you have a right to know about the settlement of this collective action lawsuit that affects your rights. This Notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

**2. What is the lawsuit about?**

This lawsuit is about whether Defendant failed to pay certain overtime wages for hours worked in excess of 40 hours in a given workweek. Specifically, the lawsuit alleged that Defendant had a company-wide policy that requires the Settlement Class Members, like yourself, to always arrive at least 10 minutes prior to their start time to allow for proper change of shift procedures, such as receiving a shift change report and attending a safety meeting, but does not pay for this work which resulted in unpaid overtime. The Court has not made any ruling on the merits of the claims.

**3. What is a collective action?**

In a "Collective Action," one or more people called "Representative Plaintiffs" sue on behalf of people who have similar claims. When other employees who have similar claims opt into the Collective Action, they become "Collective Members" or "Opt-in Plaintiffs." For the purposes of this settlement, you may opt into the Collective Action and participate in the settlement of the lawsuit by cashing the enclosed settlement check by [180 days from mailing]. By cashing the enclosed settlement check, you are agreeing to be a Collective Member, and agreeing to be bound by the settlement and release of claims as explained below.

**4. Why is there a settlement?**

The Court did not decide in favor of Representative Plaintiff or Defendant. The Parties agreed to this settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. That way, they avoid the cost of a trial, and the people affected will get compensation.

DocuSign Envelope ID: E9BFB56F-1G35-4726-A7D2-B94531C135D4

## WHO IS IN THE SETTLEMENT?

**5. How do I know if I will be included in the settlement?**

LPS Services identified you as a present or former full-time hourly security officer, or someone with similar duties but other title, employed by Defendant during the period of September 15, 2017 to April 3, 2021. You are receiving this notice and the enclosed settlement check because you are eligible to participate in settlement.

**6. I'm not sure if I want to be included.**

If you are still not sure whether you would like to be included, you can ask for free help. You can contact the attorneys for the Plaintiff as follows:

Shannon M. Draher
Robi J. Baishnab
Nilges Draher LLC
7266 Portage Street NW
Suite D
Massillon, OH 44646
(234) 401-9089

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**7. What does the settlement provide?**

Defendant has agreed to pay $99,386.12 to be utilized to pay monies to Settlement Class Members like yourself. The settlement amount will be used to pay settlement payments, Court-approved attorneys' fees and costs, one-half of the settlement administrative costs, Court-approved service payment to the Representative Plaintiff, Sasha Alleman.

After subtracting the foregoing costs and fees, the remaining settlement funds were divided proportionately among Settlement Class Members, including you, based on your proportional share of damages as calculated from the number of weeks you worked during the Covered Period. Should you not participate by cashing the enclosed settlement check by [180 days from mailing], your portion will be returned to LPS Services.

**8. How much will my payment be and how was it calculated?**

Based on the formula that has been approved by the Court, the enclosed check is for your proportional share of $_____. Half of this amount is subject to deductions for applicable taxes and withholdings like a standard paycheck and for which you will receive a W-2. The other half reflects a non-wage payment that will be reported on an IRS Form 1099. The allocation formula takes into account the number of weeks you worked for Defendant. The Settlement Agreement contains the exact allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 12 below.

4

**RELEASE OF CLAIMS**

| 9. What am I giving up if I cash the settlement check by [180 days from mailing]? |
| --- |

Once you cash the enclosed settlement check by [180 days from mailing], you agree to be bound by the terms of settlement, including releasing LPS Services from the wage-and-hour claims contained in the Complaint, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses for the period from September 15, 2017 through April 3, 2021, which reflects the date range of time and pay data produced for mediation.

This means you cannot sue, continue to sue, or be a party in any other lawsuit against Defendant relating to the claims at issue in this case during the time period covered by the Settlement. It also means that all of the Court's orders will apply to you and legally bind you. If you do not cash the enclosed settlement check by [180 days from mailing], you will not participate in the settlement, you will not receive any other payment, and you will not be bound by the Court's orders.

**THE LAWYERS REPRESENTING YOU**

| 10. Do I have a lawyer in this case? |
| --- |

Upon cashing the enclosed settlement check by [180 days from mailing], you will be consenting to join this case, you will designate the law firm of Nilges Draher LLC to represent you. These lawyers are called "Plaintiff's Counsel." You will not be charged for these lawyers. You can find more information about Plaintiff's Counsel at http://www.ohlaborlaw.com/.

You do not need to retain your own attorney in order to participate in the settlement.

| 11. How will the lawyers be paid? |
| --- |

The Court has approved payment of $33,128.71 for attorneys' fees, which is one-third (1/3) of the total settlement amount, plus $3,777.11 in attorneys' actual out-of-pocket costs. These amounts compensate Plaintiff's Counsel for investigating the facts, litigating the case, negotiating the settlement, and reimburse Plaintiff's Counsel's out-of-pocket costs.

**GETTING MORE INFORMATION**

| 12. How do I get more information? |
| --- |

If you have other questions about the settlement, you can contact Plaintiff's Counsel at the address and/or telephone number below.

Robi J. Baishnab
Shannon M. Draher
Nilges Draher LLC
7266 Portage Street NW
Suite D
Massillon, OH 44646
(234) 401-9089
